IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

CHARLES BANKS,

*Defendant.*

CRIMINAL ACTION
NO. 24-25

Pappert, J.                                                                                          June 21, 2024

**MEMORANDUM**

       Charles Banks is charged with possession of a firearm by a person previously convicted of a crime punishable by more than one year of imprisonment and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(g)(1) and 922(k), respectively. (ECF No. 1). The Government alleges that there was an active warrant for Banks's arrest when two Philadelphia police officers stopped and frisked him and removed a gun with an obliterated serial number from his waistband. (Resp. in Opp. to Mot. to Dismiss the Indictment, pp. 1–2, ECF No. 21).

       Banks has multiple convictions that trigger § 922(g)(1). On three separate occasions, he was convicted of both possession with intent to deliver a controlled substance and conspiracy to commit the underlying intent-to-deliver offense—violations of 35 Pa. Cons. Stat. § 780-113(a)(30) and 35 Pa. Cons. Stat. § 903, respectively—which are each felonies punishable by up to fifteen years' imprisonment. He was also convicted for knowing and intentional possession of a controlled substance, in violation of 35 Pa. Cons. Stat. § 780-113(a)(16), a first-degree misdemeanor punishable by up to

1

three years' imprisonment.[1]

Banks moves to dismiss the Indictment, arguing that §§ 922(g)(1) and 922(k) are unconstitutional both as applied to him and on their face.  (Mot. to Dismiss, pp. 3–4, ECF No. 20).  Banks's arguments are without merit, and the Court denies the motion.

I

A

In *New York State Rifle & Pistol Association, Inc. v. Bruen*, the United States Supreme Court established a history-based framework for deciding whether a firearm regulation is constitutional under the Second Amendment.  142 S. Ct. 2111, 2127 (2022).  Under *Bruen*, courts must first determine whether the text of the Second Amendment applies to a person and his proposed course of conduct and, if it does, "the government must affirmatively prove that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Bruen*, 142 S. Ct. at 2127, 2134–35.

In *Range v. Attorney General*, the Third Circuit Court of Appeals considered a civil action brought by Bryan Range, who sought a declaration that 18 U.S.C. § 922(g)(1) violated the Second Amendment as applied to him and an injunction prohibiting the law's enforcement against him.   69 F.4th 96, 98–99 (3d Cir. 2023).  Range previously pleaded guilty to one count of making a false statement to obtain food stamps, in violation of 62 Pa. Cons. Stat. § 481(a), a conviction that was then classified

---

[1]  A violation of 35 Pa. Cons. Stat. § 780-113(a)(16) is ordinarily punishable by a term of imprisonment up to one year, but if the violation is committed after a prior violation of the act has become final—as was the case for Banks—a person is eligible to be sentenced to a term of imprisonment up to three years.  See 35 Pa. Cons. Stat. § 780-113(b); *see also* (Gov't Resp. in Opp. to Mot. to Dismiss, p. 3, ECF No. 21 (collecting Banks's case history)).

2

as a misdemeanor punishable by up to five years' imprisonment, which under § 922(g)(1) precluded Range from possessing a firearm. *Id.* at 98.

The District Court had granted summary judgment in favor of the Government. *Range v. Lombardo*, 557 F. Supp. 3d 609 (E.D. Pa. 2021). While Range's appeal was pending, the Supreme Court decided *Bruen*. A Third Circuit panel affirmed the District Court's judgment under the *Bruen* framework. *Range v. Attorney General*, 53 F.4th 262 (3d Cir. 2022) (*per curiam*), *rev'd en banc*, 69 F.4th 96 (3d Cir. 2023). The Third Circuit then granted Range's petition for rehearing *en banc* and reversed the panel's decision, holding that the Government had "not shown that the Nation's historical tradition of firearms regulation supports depriving Range of his Second Amendment right to possess a firearm." *Range*, 69 F.4th at 106.

*Range*'s holding was narrow and limited to the facts of that case, particularly the nature of Bryan Range's previous conviction. *Id.* The Circuit's decision did not purport to vitiate § 922(g)(1), nor did it question the constitutionality of § 922(k).

B

Banks, like Range, is "one of the people" protected by the Second Amendment despite his prior felony convictions. *See Range*, 69 F.4th at 101. The Third Circuit held that "the people" in the Second Amendment's text refers to all Americans and not only law-abiding persons. *Id*. And the Government does not contend otherwise. (Resp. in Opp. to Mot. to Dismiss, p. 11).

The next question is whether the text of the Second Amendment applies to Banks's "proposed course of conduct." *Bruen*, 142 S. Ct. at 2134–35. If it does, the Government bears the burden to prove that its firearms regulation is "consistent with

3

the Second Amendment's text and historical understanding." *Id.* at 2131. The Government, noting that Banks's gun had an obliterated serial number and was obtained while there was an active warrant for his arrest, contends that the Second Amendment does not apply to Banks's conduct because he did not possess the firearm for a lawful purpose. (Resp. in Opp. to Mot. to Dismiss, pp. 9–10). The Court need not address whether the Second Amendment covers Banks's conduct—even if it does, the Government has met its burden to show that 18 U.S.C. §§ 922(g)(1) and 922(k) as applied to Banks are "consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 142 S. Ct. at 2130.

C

"Historical tradition can be established by analogical reasoning, which 'requires only that the government identify a well-established and representative historical *analogue*, not a historical *twin*.'" *Range*, 69 F.4th at 103 (quoting *Bruen*, 142 S. Ct. at 2133). "Regulations targeting longstanding problems must be 'distinctly similar' to a historical analogue," but "'modern regulations that were unimaginable at the founding' need only be 'relevantly similar' to one." *Id.* (quoting *Bruen*, 142 S. Ct. at 2131–32). The question is "whether modern and historical regulations impose a comparable burden on the right of armed self-defense and whether that burden is comparably justified." *Bruen*, 142 S. Ct. at 2133. The Supreme Court has emphasized that this methodology is "not meant to suggest a law trapped in amber." *United States v. Rahimi*, 602 U.S. ___ (2024).

The Government cites to *District of Columbia v. Heller*, in which the Supreme Court noted that "nothing in our opinion should be taken to cast doubt on the

4

longstanding prohibitions on the possession of firearms by felons" or "laws imposing conditions and qualifications on the commercial sale of arms." 554 U.S. 570, 626–27 (2008). The Government also relies on two concurring opinions in *Bruen,* reaffirming the Supreme Court's statements in *Heller* that felon dispossession statutes are longstanding and presumptively lawful. *See Bruen*, 142 S. Ct. at 2157 (Alito, J., concurring) (emphasizing that the decision does not "disturb[ ] anything that [the Court] said in *Heller* . . . about restrictions that may be imposed on the possession or carrying of guns"); *see also id.* at 2162 (Kavanaugh, J., concurring) (noting that "the Second Amendment allows a 'variety' of gun regulations," and *Bruen* did not "cast doubt on longstanding prohibitions on the possession of firearms by felons" (citation omitted)).

i

Firearm regulation in the era of the Second Amendment's ratification disarmed individuals who "pose[d] a threat to the orderly functioning of society." *Range*, 69 F.4th at 110 (Ambro, J., concurring). For example, during the American Revolution, Pennsylvania and Massachusetts disarmed British loyalists who refused to swear allegiance to the state or the United States to "eliminate[ ] the opportunity for [them] to violently protest the actions of the [state] government." Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 506–07 (2004), *quoted in Folajtar v. Attorney General*, 980 F.3d 897, 914 (Bibas, J., dissenting).

The understanding that dangerous individuals could be disarmed persisted after ratification. In some states during the mid-19th century, if individuals were "reasonably accused of intending to injure another or breach the peace," they could be

5

subject to firearm restrictions that did not apply to others. *Bruen*, 142 S.Ct. at 2148–49 (2022).

Banks's prior convictions triggering § 922(g)(1)— all drug offenses—demonstrate that, if armed, he poses a danger to society. Guns are "tools of the trade" for drug dealers. *United States v. Martinez*, 938 F.2d 1078, 1083 (10th Cir. 1991). And drugs and guns are a "dangerous combination" that increases the risk of violence. *Smith v. United States*, 508 U.S. 223, 240 (1993). As a convicted drug trafficker, Banks is the type of individual who, if armed, is a danger to society. *See Range,* 69 F.4th at 110. Range, by contrast, had pleaded guilty to a misdemeanor of making a false statement to obtain food stamps, and had a criminal history otherwise limited to traffic tickets and fishing without a license. *Range*, 69 F.4th at 98.

ii

The Government argues, likely correctly, that § 922(k) is not protected by the Second Amendment's plain text because (1) obliterated serial numbers are not typically possessed by law-abiding citizens for lawful purposes and (2) § 922(k) does not infringe on the central right to armed self-defense since the presence of a serial number does not impair a firearm's capabilities. (Resp. in Opp. to Mot. to Dismiss, p. 21) (citing *United States v. Marzzarella*, 614 F.3d, 85, 99 (3d Cir. 2010), *overruled on other grounds by Bruen*, 142 S. Ct. at 2127).

But even if possession of a firearm with an obliterated serial number is protected by the Second Amendment, § 922(k) is still consistent with this Country's longstanding history of firearm regulation. Early state legislatures regulated and traced the manufacturing and transfer of firearms and gunpowder. For example, at least two

states—Massachusetts and Maine—ensured that gun barrels had and maintained proof marks and prohibited their obliteration. Massachusetts appointed "provers of fire arms" to "prove all musket barrels and pistol barrels" presented to them. 3 Laws of the Commonwealth of Massachusetts from November 28, 1780 to February 28, 1807, at 259 (1807). Maine similarly passed a law requiring the appointment of "suitable persons, to be provers of the barrels of all new, or unused firearms" and imposed a fine on any person who sold a gun without having it first "proved, marked and certified." Laws of the State of Maine 546 (1830).

During the same era, Pennsylvania required gunpowder be marked, and prohibited unmarked gunpowder from being transferred. 3 Laws of the Commonwealth of Pennsylvania, from the Fourteenth Day of October, One Thousand Seven Hundred 240–244 (John Bioren 1810). Massachusetts and New Hampshire similarly required gunpowder be inspected and marked. 2 General Laws of Massachusetts from the Adoption of the Constitution to February 1822, at 199 (Theron Metcalf 1823); Laws of the State of New Hampshire; with the Constitutions of the United States and of the State Prefixed 277 (Isaac Long, Jr. 1830).

Although § 922(k) does not apply to guns without serial numbers that were manufactured or imported before 1968, *see* Gun Control Act of 1968, Pub. L. No. 90-618, § 102, 82 Stat. 1213, 1223, and is not a "dead ringer" for the historical regulations of marking and tracing firearms and gunpowder, it is "analogous enough to pass constitutional muster." *Bruen*, 142 S. Ct. at 2133. Additionally, § 922(k) imposes a minimal burden on the right of armed self-defense—one that is no greater than those imposed by the aforementioned historical laws—and is comparably justified to identify

7

and trace gun ownership. *See id.*

II

Banks also believes, incorrectly, that 18 U.S.C. §§ 922(g)(1) and 922(k)(1) are unconstitutional on their face, and that § 922(g)(1) is also unconstitutionally vague and violates the Commerce Clause.

Facial challenges may be brought under the Second Amendment. *See Heller*, 554 U.S. 570 (2008). But "[a] party asserting a facial challenge 'must establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Mitchell*, 652 F.3d 387, 405 (3d Cir. 2011) (*en banc*) (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). Banks cannot show that §§ 922(g)(1) and 922(k) are unconstitutional as applied to his case, let alone in all circumstances.

A criminal statute is impermissibly vague only if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Williams*, 553 U.S. 285, 304 (2008) (citations omitted). But § 922(g)(1) provides explicit notice that it bars the possession of a firearm by any person who has previously been convicted of a crime punishable by more than a year in prison (or of certain misdemeanors as defined).

Finally, Banks argues that 18 U.S.C. § 922(g)(1) is inconsistent with the original public meaning of the Commerce Clause. (Mot. to Dismiss, pp. 18–19). But he admits

precedent forecloses this argument. (*Id.*); *United States v. Singletary*, 268 F.2d 196 (2001).

An appropriate Order follows.

BY THE COURT:

_____
Gerald J. Pappert, J.