**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| v. | : CRIMINAL NO. 24-25 |
| CHARLES BANKS | : |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Martin E. Howley, Jr., Assistant United States Attorney, respectfully files this sentencing memorandum regarding defendant Charles Banks.

**I.     BACKGROUND**

On January 24, 2024, a Grand Jury sitting in the Eastern District of Pennsylvania returned a two-count indictment in case number 24-CR-25 against the defendant, Charles Banks, charging him with one count of possession of a firearm by a felon, in violation of Title 18, United States Code, Section 922(g)(1) and possession of a firearm with an obliterated serial number, in violation of Title 18, United States Code, Section 922(k). On July 17, 2024, Banks pled guilty to Count One of the indictment in accordance with a guilty plea agreement made pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The parties agreed that the appropriate disposition of this case is a sentence within the range of 57 to 71 months' imprisonment, a three-year term of supervised release, a fine, if any, to be determined by the Court, and a $100 special assessment. At sentencing, the government will move to dismiss Count Two of the indictment. A sentencing hearing has been scheduled for October 28, 2024.

1

The government explains below its view of the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors, which support a sentence in the range of 57 to 71 months' imprisonment, a three-year period of supervised release, and a $100 special assessment. For the reasons outlined below, the government urges the Court to accept the terms of the plea agreement and sentence the defendant accordingly.

## II.   FACTS OF THE CASE

On May 31, 2023, at approximately 10:30 p.m., Philadelphia Police Department officers Kevin Semonelle and Brian Kennedy were on routine patrol in the area of 800 S. Cecil Street in Philadelphia, Pennsylvania. Officer Semonelle saw two males, including defendant Charles Banks, and noted that the defendant appeared to match a patrol alert issued by detectives earlier that same day indicating an active warrant for the defendant's arrest.

Prior to approaching the defendant, Officer Semonelle accessed the patrol alert, compared it to the defendant, and believed they were a match. The officers stopped their car and approached the defendant in the area of 900 S. Cecil Street. Officer Semonelle asked the defendant for his name. In response, the defendant handed over his entire wallet. When Officer Semonelle confirmed the defendant's identity, he took him into custody pursuant to the arrest warrant.

Officer Semonelle frisked the defendant and removed a Ruger, Model EC9S semi-automatic pistol loaded with seven live rounds of 9mm ammunition and an obliterated serial number from the defendant's right front waistband. While they were resetting the defendant's handcuffs, the defendant asked the officers if they would throw the gun away. Officer Semonelle said no, and reminded the defendant that their body-worn cameras were on.

After being transported to the detective division for processing, the defendant ultimately agreed to give a videotaped post-*Miranda* statement to detectives. The defendant went on to admit

that he was apprehended with a pistol. During their conversation the defendant separately confirmed that he had a prior felony conviction.[1]

### III.     LEGAL STANDARD

This Court must follow a three-step process when sentencing a defendant: (1) calculate the defendant's guideline sentence, (2) formally rule on any departure motions and state how any departure affects the defendant's guideline calculation, and (3) exercise discretion by separately considering the relevant factors outlined in 18 U.S.C. § 3553(a) when setting the sentence. *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent § 3553(a) factors in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors.     [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *United States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006) (citations

---

[1] At the time of his arrest and the recovery of the firearm, the defendant had previously knowingly pled guilty in the Court of Common Pleas, Philadelphia County, to a felony punishable by a term exceeding one year.

The recovered firearm was later test-fired and determined to be operable by a ballistician assigned to the Philadelphia Police Department's Firearms Identification Unit. It therefore meets the definition of a firearm under 18 U.S.C. § 921(a)(3).

A Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives determined that the firearm was manufactured outside the Commonwealth of Pennsylvania, and thus traveled in and affected interstate commerce.

omitted).

IV. **SENTENCING CALCULATION**

    A. **Statutory Maximum Sentence**

The total maximum sentence that this Court can impose is 15 years' imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment.

    B. **Sentencing Guidelines Calculation**

The Probation Officer determined that the base offense level for a violation of 18 U.S.C.§ 922(g)(1), under § 2K2.1 of the Sentencing Guidelines is 24 because the defendant committed the instant offense after sustaining two felony drug convictions and was prohibited from possessing firearms. PSR ¶ 22. The government acknowledges that it overlooked the defendant's first qualifying drug conviction (PSR ¶ 37) when it assessed the defendant's criminal history during the plea negotiations for this case and errantly believed it was too dated to be assessed criminal history points.

The Probation Officer also determined that the enhancement for possession of a firearm with an obliterated serial number was applicable and added an additional four levels. PSR ¶ 23. The defendant has objected to the enhancement. The Application Notes for § 2K2.1 address whether or not the defendant must have knowledge of the obliterated serial number on the weapon, but they do not appear to provide guidance for instances where, like here, the serial number is obliterated when it is first recovered by law enforcement but can later be fully restored. The defendant is correct that the Philadelphia Police Department ballistician was able to use a chemical restoration process to fully restore the serial number on the gun ahead of test firing the weapon for operability.

In response to the defendant's objection, the Probation Officer determined that enhancement is properly included, but takes no position on whether the inclusion overstates the advisory guideline range and would form the basis for a downward variance. PSR at 23. In support for his position, the

4

Probation Officer pointed to two non-precedential Third Circuit decisions: *United States v. Jackson*, 495 Fed.Appx. 224 (3d Cir. 2012) and *United States v. Briggs*, 382 Fed.Appx. 138 (3d Cir. 2010).[2] The Probation Officer noted that in those cases "the serial number of the firearm was not visible until it was discovered by forensic examination" (*Jackson*) or "was not visible until the government restored it" (*Briggs*). PSR at 24 (Response No. 1(b), 1(c)). A closer review of both decisions suggests they are potentially distinguishable from the instant circumstances.

In *Jackson*, the Third Circuit ultimately held that the application of the obliterated serial number enhancement was procedurally reasonable. The panel noted that the District Court considered that "the second intact serial number on the gun […] was not plainly visible and was only discovered by a forensic examination of the weapon." *Jackson* 495 Fed.Appx. at 226. The government's brief in the *Jackson* appeal quotes an exchange with defense counsel and the District Court at the original sentencing hearing that appears to demonstrate the firearm at issue in that matter had two serial numbers. *Jackson*, Brief of Appellee at 44-47. One appears to have been visible on the exterior of the firearm – and was presumably the obliterated serial number at issue – while the other was on the interior of the firearm and plainly visible when the gun was disassembled during analysis by a crime lab technician. The Philadelphia Police Department ballistician in this case only

---

[2] The Probation Officer errantly cited *Briggs* at "232 Fed.Appx. 138 (3rd Cir. 2010)" [sic]. PSR at 24. The government believes it has identified the correct decision at 382 Fed.Appx. 138 (3d Cir. 2010) based on the claims that were raised.

The Probation Officer also noted that "several other Circuit Courts, includ[ing] the 7th, 8th, and [10th] have addressed the issue where the serial number is not visible to the naked eye and required chemical or other laboratory techniques to recover the serial number. In these cases, the four-level specific offense characteristic was appropriately applied" without identifying particular or seminal cases for each Circuit. PSR at 24 (Response No. 1(d)). The Final Presentence Investigation Report was issued on October 18, 2024 at 2:30 p.m., and sentencing memorandums were due October 21, 2024 consistent with the Court's sentencing hearing order. If the Court desires additional briefing discussing the status of the precedent in other Circuits, the government will of course abide by that direction, but respectfully requests additional time to conduct that research and analysis.

noted the presence of a single serial number and it was fully restored by a chemical restoration process.

In *Briggs*, the Third Circuit similarly held that the District Court did not err when they applied the obliterated serial number enhancement. Importantly, the panel noted that "[t]he government was able to *partially* restore the serial number using chemicals." *Briggs*, 382 Fed.Appx. at 141 (emphasis added). In contrast, the ballistician in the instant case was able to recover the entirety of the serial number on the gun that was recovered from the defendant.

After subtracting a total of three levels for acceptance of responsibility (2 levels), and the defendant's timely notification of his intention to plead guilty (1 level) the total offense level is 25. PSR ¶ 29-31.

The defendant has primarily drug-related convictions in the Philadelphia County Court of Common Pleas. The Probation Officer correctly determined that the defendant had a total of eight criminal history points. PSR ¶ 41. A criminal history score of eight establishes a criminal history category of IV. PSR ¶ 42.

The applicable guideline range for an offense level of 25 and a criminal history category of IV is 84 to 105 months' imprisonment. USSG Sentencing Table; PSR ¶ 79. Nevertheless, the parties negotiated the resolution of this matter in good faith and the government believes a sentence in the range of 57 to 71 months' imprisonment remains appropriate for the reasons outlined below.

V. **GOVERNMENT'S RECOMMENDATIONS CONCERNING SENTENCING**

    A. **Sentencing Factors**

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that the parties' recommended sentence is an appropriate sentence in this case. The Court must consider all of the sentencing considerations set forth in § 3553(a). Those factors include: (1)

the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  18 U.S.C. § 3553(a).

    **B.**    **Application**

The relevant § 3553(a) factors will be discussed in turn.

    **1.**    **The Nature and Circumstances of the Offense**

This was a serious offense.  Notwithstanding the defendant's criminal history, he possessed an illegal firearm in Philadelphia, a city seemingly overrun with illegal firearms. Fortunately, however, the defendant's actions in this case, while dangerous, did not result in physical harm to innocent individuals. Therefore, while incredibly serious, the intervention of law enforcement avoided any potential physical harm being caused by the defendant's possession of the firearm.

The defendant provided no resistance to the arresting officers. When he was transported to the detective division for processing, he immediately waived his *Miranda* rights and gave an interview to detectives. He acknowledged his guilt to the detectives and also acknowledged he had a prior felony conviction.

    **2.**    **The History and Characteristics of the Defendant**

The defendant was born and raised in Philadelphia where he experienced a "stable and

supportive upbringing." PSR ¶ 55. He has no reported mental health issues but did report a substance abuse history. PSR ¶¶ 69-72. While the defendant has a criminal history that dates back some time, he has shown that he can lead a law-abiding lifestyle, if he wishes. The bulk of his criminal contacts also consist of drug-related convictions.

The most troubling portion of the defendant's history relates to the anger management issues discussed in the presentence report. The longstanding and troubling link between domestic violence and firearms can hardly be overstated. It is an additional reason why a period of imprisonment is additionally important in this instance.

### 3. The Need for Sentence Imposed to Reflect Seriousness of the Offense, Promote Respect for Law, and Provide Just Punishment

There is a strong need to impose a custodial sentence that reflects the seriousness of these offenses, promotes respect for U.S. laws, and provides just punishment. The City of Philadelphia is plagued by gun violence. It is imperative, therefore, that the defendant's conduct be punished accordingly for his possession of an illegal firearm in this case. The defendant's conduct in this case supports a sentence of imprisonment. The recommended term of incarceration, 57 to 71 months, is longer than any other term imposed on the defendant and will far exceed his prior incarceration terms. It is the government's belief that this term of imprisonment will help to instill respect for the law and reflect the seriousness of the case upon the defendant.

### 4. The Need for Adequate Deterrence and Protection of Public

The need for adequate deterrence of this type of crime is great. Given the prevalence of gun violence in this region, the need to deter others from similar crimes is especially important.

The parties recommended sentence is significantly longer than what the defendant could reasonably expect to receive if the matter had been adjudicated in the Philadelphia court system.

Furthermore, the recommended sentence protects the public from further crimes by the defendant, for at least as long as he remains in prison. The agreed upon range of incarceration, and a period of supervised release, should deter the defendant from future crime, particularly gun crime. The defendant will effectively be under court related oversight for a lengthy period of time, which will aid in his deterrence. Facing the prospect of reincarceration for any violation, and potential future federal prosecution for any new offense, the defendant will, hopefully, begin to lead a law-abiding lifestyle.

### 5. The Need to Provide the Defendant with Training, Medical Care or Correctional Treatment

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment that cannot be adequately addressed by the Bureau of Prisons during incarceration.  Should the defendant wish to avail himself of the Bureau of Prisons', or U.S. Probation Office's, offerings for education, training, or treatment, the recommended sentence will not inhibit those efforts.  As noted above, it appears from his history that the defendant may be in need of substance abuse treatment, and the government therefore would support having such an evaluation included within the defendant's eventual release terms.

### 6. The Need to Avoid Unwarranted Sentence Disparities Among Similarly Situated Defendants

Adherence to the recommended guideline range is generally the best course for assuring that the defendant's sentence is consistent with those imposed nationwide on similarly-situated offenders.  Here, the government submits to the Court that a sentence in the negotiated range is nevertheless appropriate in this case due to the nature and age of the bulk of the defendant's criminal history.  Although the defendant has eight criminal history points, the government notes that they

principally arise out of two drug convictions whose initial sentences were imposed almost a decade ago in both cases.

For all of these reasons, the government respectfully submits that the sentence agreed to by the parties is appropriate and asks the Court to impose a term of imprisonment in the range of 57 to 71 months, a three-year period of supervised release, and a $100 special assessment.

### 7. Restitution

There is no restitution in this case.

## VII. CONCLUSION

Therefore, in sum, all of the appropriate considerations of sentencing favor the imposition of a sentence of 57 to 71 months' imprisonment in this case. For the reasons outlined above, the recommended terms should be accepted by the Court because they are fair, appropriate, and sufficient but not greater than necessary to meet the goals of sentencing.

Respectfully submitted,

Jacqueline C. Romero
United States Attorney


/s/ *Martin E. Howley, Jr.*

Martin E. Howley, Jr.
Assistant United States Attorney

Date:   October 21, 2024

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic filing upon counsel for the Defendant:

**Katrina Young, Esquire**
601 Walnut Street – Suite 540 West
Philadelphia, PA 19106
215-982-1100
katrina_young@fd.org
*Counsel for defendant Charles Banks*

/s/ *Martin E. Howley, Jr.*

Martin E. Howley, Jr.
Assistant United States Attorney

Date: October 21, 2024