IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| V. | : | CRIMINAL NUMBER 24-25 |
| | : | |
| CHARLES BANKS | : | |

### DEFENDANT'S SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD VARIANCE

In May 2023, Mr. Banks made the foolish decision to carry a firearm—a decision for which he is prepared to accept the consequences, the most difficult of which will be missing out on rearing his two young children during particularly formative years of their lives. He fully acknowledges that this is not his first lapse in judgment, though his criminal history is almost entirely drug-related and took place over at least a decade ago. Having come far too close to losing his own life to gun violence in 2017, he is acutely aware of the dangers involved in carrying a firearm even if only for self-protection. Today, just shy of 40 years old, Mr. Banks makes no excuses for his decision and understands why he faces exponentially more imprisonment than the brief county jail and probation sentences he served in the past. He simply asks that in determining his sentence, the Court meaningfully consider the effect such a sentence will have on him and his children, his immediate cooperation with the officers when they encountered him, and his consistent employment as a barber and home health aide prior to his arrest.

Additionally, for the reasons articulated below, Mr. Banks, through counsel, submits that application of the four-level enhancement under § 2K2.1(b)(4)(B)(i) is improper, because the serial number on the firearm he possessed was not "obliterated" within the meaning of the

Guideline, thereby resulting in an advisory range of 57-71 months of imprisonment. In the alternative, for the reasons that follow, a downward variance to a sentence within that jointly recommended range is appropriate and aligns with the statutory sentencing goals and other factors the Court must consider under 18 U.S.C. ¶ 3553(a).

I. **THE RECOMMENDED SENTENCING GUIDELINES RANGE AND MR. BANKS'S OBJECTION TO THE PRESENTENCE REPORT (PSR)**

The Probation Officer incorrectly concluded that "the firearm [Mr. Banks possessed] had an obliterated serial number" and therefore erred in applying a four-level increase to the base offense level pursuant to § 2K2.1(b)(4)(B)(i). *See* ¶ 23. The term "obliterated" is not defined in the Sentencing Guidelines or its commentary; thus, a determination of its meaning requires application of the rules of statutory construction. *United States v. Wong*, 3 F.3d 667, 670-71 (3d Cir. 1993). Confronted with this task, the Court in a recent decision in this district found that "[t]o 'obliterate' connotes a total and utter destruction of something, such that there is no trace of it left behind." *United States v. Riley*, 574 Supp. 3d 248, 255 (E.D. Pa. 2021) (considering Black's Law Dictionary, Merriam-Webster's Unabridged Dictionary, and others); *see also United States v. St. Hilaire*, 960 F.3d 61, 66 (2d Cir. 2020) ("Taking the dictionary definitions together in the context of a serial number, to obliterate is to efface entirely a character or a whole serial number, so that none of it is left.") In so doing, the Court found that the enhancement did not apply to a serial number that was "damaged by green paint and scratch marks" and necessitated a restoration through "raising." *Id.* at 256.

In the case of the gun Mr. Banks possessed, the Firearms Identification Unit (FIU) identified the serial number as 457-04836 utilizing "chemical restoration techniques." *See* FIU

Report attached hereto as Exhibit A.[1]  Thus, it was not "total[ly] and utter[ly] destr[oyed] [] such that there is no trace of it left behind." *Riley*, 574 Supp. 3d at 255.  Therefore, the serial number was not obliterated, and § 2K2.1(b)(4)(B)(i) is not applicable.

Alternatively, should the Court find that the serial number was "obliterated," Mr. Banks respectfully submits that a downward variance equivalent to the four-level enhancement under § 2K2.1(b)(4)(B)(i) is warranted, because inclusion of this specific offense characteristic overstates the advisory guidelines range and, in this case, does not serve the sentencing goals set forth in 18 U.S.C. § 3553(a)(2).[2]  First, as the government emphasizes, the fact that the ballistician "was able to recover the entirety of the serial number on the gun" is meaningfully distinguishable from the factual scenarios present in the two non-precedential cases cited by the United States Probation Officer in applying the enhancement.  Gov. Sentencing Mem. 5-6.

Second, and relatedly, that the serial number was fully intact and ultimately legible means the firearm is traceable.  The Sentencing Commission's purpose in enacting the enhancement was to discourage the possession of untraceable firearms through greater punishment due to the difficulties untraceable guns present to law enforcement in investigating crimes.  *United States v. Seesing*, 234 F.3d 456, 460 (9th Cir. 2001); *see also* U.S.S.G. App. C, Amend. 691, Reason for Amendment (Nov. 1, 2006).  Because the firearm Mr. Banks possessed is entirely traceable, applying the four-level enhancement would not serve its ultimate purpose.

Third, there is no evidence that Mr. Banks attempted to remove the serial number from the firearm or that he was even aware of its attempted removal.  To be clear, Mr. Banks

---

[1] That the Philadelphia Police firearms examiner deemed the serial number "obliterated" is irrelevant to the Court's analysis for purposes of determining whether § 2K2.1(b)(4)(B)(i) applies.  As the Court declared in *Riley*, "[w]e do not know what Philadelphia Police officers mean when they use the term 'obliterate' in connection with a serial number, or even if it is used consistently between individual officers." *Riley*, 574 Supp. 3d at 257.
[2] Such a variance would result in a sentence in the range of 57-71 months of incarceration, which is the jointly recommended range outlined in Mr. Banks's plea agreement.

3

acknowledges that the enhancement is applied without regard to scienter, *see* § 2K2.1 n. 8(B); however, Mr. Banks respectfully asks this Court to afford nominal deference to the enhancement because it is not a useful measure of the seriousness of his conduct or culpability and does not serve the statutory purposes of sentencing. *See* § 3553(a)(2). Consistent with the "longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state[]" evidence of scienter remains an essential predicate to culpability. *Ruan v. United States*, 597 U.S. 450, 457–58 (2022) (quoting *Rehaif v. United States*, 588 U. S. 225, 229 (2019)). Put differently, "'wrongdoing must be conscious to be criminal.'" *Ruan*, 597 U.S. at 458 (internal quotations omitted). The additional punishment exacted by strict application of § 2K2.1(b)(4)(B)(i) is antithetical to this bedrock tenet of our criminal justice system. Nevertheless, the United States Sentencing Commission has never articulated an empirically justified policy reason for the lack of scienter in the enhancements set forth in § 2K2.1(b)(4).[3] *See Fed. Public and Community Def. Comments on the U.S. Sent'g Comm's 2023 Proposed Firearms Offenses (Proposal 3)("Defenders' 2023 Firearms Comments")*, at 2-27 (Mar. 14, 2023). While the purpose of the four-level enhancement under § 2K2.1(b)(4)(B)(i) is to impose additional punishment for possession of untraceable firearms, *Seesing*, 234 F.3d at 460, the enhancement has not realized much potential as an effective deterrent.[4] As to Mr. Banks, the four-point enhancement serves no statutory purpose of

---

[3] Fortunately, it is well-established that district courts have discretion to disregard certain Guidelines enhancements due to policy disagreements and may impose a different sentence based upon what is appropriate under 18 U.S.C. § 3553. *See generally, Rita v. United States*, 511 U.S. 338 (2007); *Gall v. United States*, 522 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). Section 3553(a) provides the Court with an opportunity to impose an individualized sentence for Mr. Banks that more adequately reflects the nature of his offense, provides sufficient deterrence, and promotes respect for the law.

[4] The rate at which the § 2K2.1(b)(4) enhancement has been applied since 2006 has not decreased, indicating the negligible deterrent value of this specific offense characteristic. *Defenders' 2023 Firearms Comments*, 26, http://tinyurl.com/2b9v624r ("While DOJ requested the serial-number increase to provide stronger deterrence and better reflect the harm of these offenses, since 2006, the rate at which the enhancement has applied has not decreased, meaning the increase has provided little deterrent value." (citation and quotation marks omitted)).

4

sentencing and unfairly ratchets up the potential punishment in the absence of evidence that he is responsible for or even had knowledge of the serial number's attempted removal.  As such, he respectfully requests a downward variance to a sentence within the jointly recommended range of 57-71 months, which equates to the exact range applicable to Mr. Banks absent the four-level enhancement under § 2K2.1(b)(4)(B)(i).

## II.   APPLICATION OF THE STATUTORY FACTORS TO THIS CASE

Mr. Banks respectfully submits that a full and fair consideration of the 18 U.S.C. § 3553(a) factors warrants imposition of a sentence within the jointly recommended range of 57-71 months of imprisonment, as such a sentence will be "sufficient, but not greater than necessary" to satisfy the purposes of sentencing.  § 3553(a).   The factors the Court must consider include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  *Id.*

---

Consequently, in recent years, advocacy in support of a scienter component for all § 2K2.1(b)(4) enhancements has been well-received by the government and the Sentencing Commission.  *See Defenders' 2023 Firearms Comment*, 22–23; *Letter from Jonathan J. Wroblewski, Office of Policy and Leg., U.S. Dept. of Justice, to the Hon. Carlton W. Reeves, Chair, U.S. Sent'g Comm'n*, 7 (Feb. 27, 2023) (adding support for *mens rea* requirement).  Although an amendment has not yet resulted, progress trends toward support for the requirement.

      A.      **The Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

Immediately upon being approached by police, Mr. Banks stopped, answered their questions, and provided his identification. PSR ¶ 16. He did not try to run away, reach for the firearm, or resist the officers in any way—reactions that all too often occur in similar situations and put others' safety at risk. Thereafter, Mr. Banks voluntarily sat down with detectives, admitting to his possession of the firearm and his disqualifying criminal history. *Id.* at ¶ 17.

In the months since this May 2023 arrest, Mr. Banks has spent significant time contemplating his bad decision and its consequences, both immediate and long-term. His primary concern is for his children and the effects his incarceration will have on his relationships with them in the coming years. Despite his somewhat strained relationship with his children's mother, he is indisputably an excellent father. Indeed, their mother characterizes him as an "almost [] perfect father" and "a great person" on whom his family and friends rely. *Id.* at ¶ 57; email from Stephanie Woods attached as Exhibit B; *see also* letter from Charles Banks, II and email from United States Army Specialist Samuel Hobbs attached collectively as Exhibit C (confirming Mr. Banks is a good father and caring, helpful neighbor and community member). Prior to his arrest, he spent most of his free time with his children and financially supported them through his work as a barber and home health aide.[5] PSR ¶¶ 58, 74.

Importantly, Mr. Banks does not seek to justify this very serious offense, nor has he made excuses for his past or present criminal conduct. Despite his father's absence during his own childhood and the violence and drug activity he witnessed during his formative years, Mr. Banks

---

[5] Undersigned counsel spoke directly to Lawrence Downs—Mr. Banks's home health client—who confirmed Mr. Banks is a reliable, pleasant, hardworking aide. Mr. Downs elaborated that since Mr. Banks's arrest, Mr. Downs has had to rely on family members who "aren't nearly as good as [Mr. Banks]." Although Mr. Downs is unable to attend Mr. Banks's sentencing due to his physical limitations, Mr. Banks provided Mr. Downs's contact information to the Probation Officer at the presentence interview, and he remains available for interview. *See id.* at ¶ 74.

has nothing but gratitude for the life he has lived so far, admiration for his mother, and respect for his father. *Id.* at ¶ 55. This maturity, accountability, and overall outlook will undoubtedly serve him well in making the most out of his time in BOP custody where he is hoping to earn his barber certification and any other educational and vocational advancement available to him. Mr. Banks respectfully requests that the Court meaningfully consider the aforementioned information and impose a sentence within the jointly recommended range of 57-71 months of incarceration.

      **B.**      **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

           *1.*      *To reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense.*

Mr. Banks genuinely appreciates the seriousness of this offense, particularly when he recalls the three weeks he spent in the hospital and surgery he underwent as a result of being shot seven years ago. PSR ¶¶ 67-68. Among the reasons he pled guilty and accepted responsibility in this case are that he recognizes the gravity of his actions and acknowledges the need for punishment greater than he received for his prior convictions. Indeed, "[t]he recommended term of incarceration, 57 to 71 months, is longer than any other term imposed on [him] and will far exceed his prior incarceration terms." Gov. Sentencing Mem. 8. Requiring Mr. Banks to serve a significantly longer period of incarceration of between 57 and 71 months will naturally reflect the seriousness of the offense, promote his respect for the law, and provide just punishment.

           *2.*      *To afford adequate deterrence to criminal conduct and protect the public from further crimes of the defendant.*

As the government confirms, "the parties['] recommended sentence is significantly longer than what the defendant could reasonably expect to receive if the matter had been adjudicated in the Philadelphia court system." *Id.* Thus, the government's adoption of this case into the federal system and the Court's sentence will send the desired message to similarly

7

situated defendants that illegal firearm possession comes with severe consequences. Moreover, as to Mr. Banks specifically, the near-certain prospect of spending a significant portion of his 40s in federal prison has already served as a wakeup call, and he never again wants to be in the position of spending years away from his young children. Therefore, a sentence within the recommended range will be sufficient to accomplish the statutory goals of specific and general deterrence.

> 3. *To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Despite knowing he will spend significant time in federal prison beyond his sentencing hearing, Mr. Banks has an overall positive outlook about his future. He is in need of and is looking forward to further educational and vocational training, including earning a barber certification to enhance his employability in that field upon release. He is in good physical health overall but could benefit from counseling to address the lingering violence-induced trauma he endured when he was shot years ago. And he appreciates the government's suggestion that he undergo anger management and is more than willing to do so should such programming be offered to him.

C.     **The Guidelines and Policy Statements Issued by the Sentencing Commission**

The proposed sentence—one between 57 and 71 months of incarceration—is not inconsistent with any policy statements issued by the Sentencing Commission. As this Court is well aware, while "the Guidelines [are] a starting point and an initial benchmark" the Court must consider, *Gall v. United States*, 552 U.S. 38, 49 (2007), the Court is free to consider any other permissible factor(s) in determining whether to impose a sentence outside the applicable guidelines range. *See Booker*, 543 U.S. at 251-52. For all the aforementioned reasons, the jointly requested sentence is not inconsistent with this statutory sentencing factor.

**D.      The Need to Avoid Unwarranted Sentence Disparities**

To undersigned counsel's knowledge, a sentence within the requested range would not result in an *unwarranted* sentence disparity given Mr. Banks's history and characteristics, the nature and circumstances of the instant offense, and the aforementioned arguments regarding the application of U.S.S.G. § 2K2.1(b)(4)(B)(i) in this case.

**III.      <u>CONCLUSION</u>**

For the reasons articulated herein, the jointly requested sentence appropriately balances the § 3553(a) factors while additionally accounting for the mitigating factors outlined above. Mr. Banks stands before this Court having fully accepted responsibility for his actions. He knows and accepts his likely further incarceration sentence, the collateral consequences that flow from it, and the potential for designation at a facility far away from his children whom he loves dearly. Considering all arguments articulated herein, as well as any brought to the Court's attention at the time of sentencing, Mr. Banks respectfully requests the Court impose a sentence between 57-71 months of incarceration.

Respectfully submitted,

_/s/ signature_

KATRINA YOUNG
Assistant Federal Defender

**CERTIFICATE OF SERVICE**

    I, Katrina Young, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have electronically filed and served a copy of the Defendant's Sentencing Memorandum and Motion for Downward Variance via Electronic Court Filing notification and electronic mail upon Martin Howley, Assistant United States Attorney, office located at 615 Chestnut Street, Suite 1250, Philadelphia, Pennsylvania 19106.

                                                            KATRINA YOUNG
                                                             Assistant Federal Defender

DATE:        October 22, 2024